UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 NOV -7 AM 10: 53

| | |
|---|---|
| BOBBY MEWBOURN, JR.,        ) | |
| )  | |
| Plaintiff,                  ) | |
| )  | |
| vs.                         ) | Civil Action No. CV-02-S-2260-S |
| )  | |
| BLUE CROSS AND BLUE SHIELD OF ) | |
| ALABAMA; and WAL-MART STORES, ) | **ENTERED** |
| INC. ASSOCIATES' HEALTH &   ) | |
| WELFARE PLAN,               ) | |
| )  | NOV - 7 2002 |
| Defendants.                 ) | |
| | UNITED STATES DISTRICT COURT |
| **MEMORANDUM OPINION** | NORTHERN DISTRICT OF ALABAMA |

This action is before the court on plaintiff's motion to remand (doc. no. 9), and, the motion to dismiss filed by defendant Blue Cross and Blue Shield of Alabama ("Blue Cross") (doc. no. 8). Both motions were routinely calendared for argument on a docket scheduled to begin at 3:30 o'clock p.m. on Thursday, October 24, 2002, in Birmingham, Alabama, but the case was removed from that docket at the request of counsel representing the defendant designated in the caption of the complaint (apparently, incorrectly) as the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan (hereinafter, "the Wal-Mart Plan").[1] Upon consideration of the motions, pleadings, briefs, and evidentiary submissions in preparation for the original docket setting, however, the court determined that it would not be aided by oral argument. Accordingly, the court proceeds to consideration of the outstanding motions, as follows.

---

[1] In the response to plaintiff's motion to remand filed by this defendant on October 17, 2002, it is stated that defendant's correct name is "Associates' & Health and Welfare Plan." *See* doc. no. 11, at 1.

## I. SUMMARY OF FACTS

Plaintiff, Bobby Mewbourn, Jr., alleges that he and his son, Joshua Kaleb Mewbourn, were involved in an automobile accident on September 29, 2001, near the intersection of U.S. Highway 278 with County Road 747 in Cullman County, Alabama. The Mewbourn's vehicle collided with an automobile leased to (and occupied by) April Glover, but driven on that occasion by James Randall Bailey. Joshua Kaleb Mewbourn and April Glover died as a result of injuries sustained in that collision. Plaintiff also suffered serious bodily injuries.[2] Plaintiff's medical expenses, totaling $60,010.16, were paid by Blue Cross, acting on behalf of the Wal-Mart Plan.[3] The Wal-Mart Plan is a self-funded employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*[4]

The event which triggered this controversy was plaintiff's receipt of a $40,000 payment from his automobile liability insurance carrier, State Farm Mutual, under the uninsured and underinsured motorist provisions of his policy.[5] Blue Cross advised plaintiff's attorney's that the Wal-Mart Plan "insists that it be reimbursed the $40,000.00 from the [uninsured and underinsured motorist] policy and the balance from the liability carrier when it settles."[6] That demand was based upon a provision

---

[2] Declaratory Judgment Complaint filed in the Circuit Court of Shelby County, Alabama on July 24, 2002 as Civil Action No. CV-02-937 (attached to Notice of Removal (doc. no. 1) as Exhibit 1) ¶¶ 6-8, at 2-3.

[3] *Id.* ¶ 13.

[4] Notice of Removal ¶¶ 5-6; Plaintiff apparently does not contest the Wal-Mart Plan's characterization that it is an ERISA plan, stating that "Mr. Mewbourn does not dispute the Defendants' contention that the 'plan' at issue here may be an 'ERISA' plan." Plaintiff's brief in support of its motion to remand, at 2.

[5] Declaratory Judgment Complaint filed in the Circuit Court of Shelby County, Alabama on July 24, 2002 as Civil Action No. CV-02-937 (attached to Notice of Removal (doc. no. 1) as Exhibit 1) ¶¶ 11-12.

[6] *Id.* ¶ 14. Apparently, there also are prospects of additional payments to plaintiff from the company which owned the leased vehicle driven on the occasion of the collision by James Randall Bailey. *See id.* ¶ 10, reading as follows:

> At the time of the September 29, 2001 collision, the vehicle that James Randall Smith [sic] [this individual is identified in paragraph 6 as James Randall *Bailey*] was operating was leased to April Glover by Enterprise Leasing Company. With respect to liability coverage for the vehicle it had leased

in the "Associates Benefits Book" published by the Wal-Mart Plan, and reading as follows:

**RIGHT TO REDUCTION, REIMBURSEMENT, AND SUBROGATION**

The Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and/or your dependants to the extent of any and all of the following payments:

- Any judgment, settlement or any payment made or to be made, relating to the accident, including but not limited to other insurance.

- Any auto or recreational vehicle insurance coverage or benefits including, but not limited to, uninsured/underinsured motorist coverage.

- Business and homeowners medical and/or liability insurance coverage or payments.

- Attorney's fees.[7]

Plaintiff filed an action in the Circuit Court of Shelby County, Alabama on July 24, 2002, seeking a judgment declaring that he is not required to reimburse defendants out of payments that he has received (and will receive from other insurance carriers), on the grounds that defendants' subrogation provision "violates the public policy of Alabama as expressed by the Alabama Legislature in the provisions of Ala. Code § 32-7-23,"[8] and, further, that "the provisions contained

---

to April Glover, Enterprise Leasing Company was self-insured, with limits of $20,000.00 per person and $40,000.00 per occurrence.

[7] *Id.* ¶ 16.

[8] *Id.* ¶ 17. Ala. Code § 32-7-23 provides:

(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection

in [the Wal-Mart Plan], with respect to subrogation of uninsured and underinsured motorist benefits, including any such benefits at issue in this action, are substantively unconscionable because those provisions contravene the public interest and public policy of this State."[9]

Defendants removed the action to this court, asserting jurisdiction pursuant to ERISA. Plaintiff disagreed, and filed a motion to remand, arguing that ERISA does not confer jurisdiction where

> the ultimate question is a legal [as opposed to equitable] issue, *viz*: whether Mr. Mewbourn must reimburse Defendants out of any monetary recovery he may obtain from third parties relating to the underlying motor vehicle accident. Because this declaratory judgment action seeks legal rather than equitable relief, it does not fall within the ambit of section 502(a) of ERISA and this Court, therefore, lacks federal questions jurisdiction. . . .[10]

---

with the policy previously issued to him by the same insurer.

(b) The term "uninsured motor vehicle" shall include, but is not limited to, motor vehicles with respect to which:

(1) Neither the owner nor the operator carries bodily injury liability insurance;

(2) Any applicable policy liability limits for bodily injury are below the minimum required under Section 32-7-6;

(3) The insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of, the accident; and

(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.

(c) The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract.

[9] Declaratory Judgment Complaint filed in the Circuit Court of Shelby County, Alabama on July 24, 2002 as Civil Action No. CV-02-937 (attached to Notice of Removal (doc. no. 1) as Exhibit 1) ¶ 18.

[10] Plaintiff's motion to remand (doc. no. 9), at 2-3 (citations omitted).

## II. PLAINTIFF'S MOTION TO REMAND

The pertinent removal statute, 28 U.S.C. § 1441(a), provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441(a). Removal based upon federal question jurisdiction generally is governed by the so-called "well-pleaded complaint rule," which provides that a case may be removed only if a federal claim may be found on the face of plaintiff's well-pleaded complaint. *See, e.g., Anderson v. H & R Block, Inc.*, 287 F.3d 1038, 1041 (11th Cir. 2002) (citations omitted). Under the well-pleaded complaint rule, a case in which the plaintiff asserts only state-law claims may not be removed, even if there exists a federal defense to the plaintiff's claim, because "Congress has long since decided that federal defenses do not provide a basis for removal." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). "The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1482 (7th Cir. 1996). This concept is known as "ordinary preemption." *See Caterpillar*, 482 U.S. at 393, 107 S. Ct. at 2425, 96 L. Ed. 2d at 318. Further,

> [i]n the context of ERISA, section 514(a) provides for the ordinary preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" regulated by that statute. 29 U.S.C. [§] 1144(a). State laws preempted under section 514 therefore are displaced by federal law. However, because ordinary ERISA preemption almost invariably arises as a defense, and thus does not appear on the face of the plaintiff's well-pleaded complaint, ordinary ERISA preemption alone does not authorize removal to federal court.

*Arana v. Ochsner Health Plan, Inc.*, 302 F.3d 462, 468 (5th Cir. 2002).

In *Avco v. Aero Lodge No. 735*, 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968), however, the Supreme Court created an exception to the well-pleaded complaint rule that applies when Congress has completely preempted an area of state law. The so-called "complete preemption doctrine" serves to permit recharacterization of a plaintiff's state law claim as a federal claim, so that federal question removal pursuant to 28 U.S.C. § 1441 is proper. *Anderson*, 287 F.3d at 1041-42 (citations omitted). The issue of whether a particular cause of action is completely preempted is determined by congressional intent.

In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S. Ct. 1542, 1548, 95 L. Ed. 2d 55 (1987), the Supreme Court expanded the "complete preemption" exception to include all state-law actions which assert a claim falling within § 502(a) of ERISA. "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pled the state action." *Arana*, 302 F.3d at 468 (citing *Copling v. Container Store, Inc.*, 174 F.3d 590, 594 (5th Cir. 1999)).

Plaintiff argues that, because he does not seek relief under § 502(a), this court does not have jurisdiction over this action. In support of this contention, plaintiff relies largely upon the recent Fifth Circuit decision in *Arana v. Ochsner Health Plan, Inc.*, 302 F.3d 462 (5th Cir. 2002). In *Arana*, the plaintiff brought a state-court declaratory judgment action against his health insurer regarding the insurer's subrogation claim on compensation that plaintiff had received as a result of an automobile accident. *Id.* at 465-66. The action was subsequently removed to federal court, where the district judge granted plaintiff's motion for summary judgment. *Arana v. Ochsner Health Plan, Inc.*, 134 F. Supp. 2d 783 (E.D. La. 2001). The health insurer appealed. On appeal, the Fifth Circuit held that plaintiff's state-law declaratory judgment claim, alleging that the health insurer was barred

from asserting its subrogation claim under state law (in *Arana*, Louisiana law), was not a claim for benefits under § 502(a), such that the claim would be completely preempted by ERISA, and thus removal of the claim was not proper because the district court did not subject matter jurisdiction over the matter. *Arana*, 302 F.3d at 470-71.

Here, the relief sought by plaintiff in his complaint is a declaratory judgment:

(a) That the Defendants' assertion of any purported right to subrogation with respect to uninsured or underinsured motorist benefits, including any such benefits at issue in action, violates public policy of Alabama as expressed by the Alabama Legislature in the provisions of Ala. Code § 32-7-23.

(b) That the provisions contained in the plan of the Defendant, Wal-Mart Plan, with respect to subrogation of uninsured and underinsured motorist benefits, including any such benefits at issue in this action, are substantively unconscionable because those provisions contravene the public interest and public policy of this State;

(c) That the provisions contained in the plan of the Defendant, Wal-Mart Plan, with respect to subrogation of uninsured and underinsured motorist benefits, including any such benefits at issue in this action, are void as violative of the public policy of Alabama, as expressed by the Alabama Legislature in the provisions of Ala. Code § 32-7-23.

(d) That the Defendants may not, as a matter of law, enforce the provisions contained in the plan of the Defendant, Wal-Mart Plan, with respect to or as they relate to subrogation of uninsured and underinsured motorist benefits, including any such benefits at issue in this action;

(e) That the Defendants may not, as a matter of law, in the future enforce or seek to enforce the provisions contained in the plan of the Defendant, Wal-Mart Plan, with respect to or as they relate to subrogation of uninsured and underinsured motorist benefits, including any such benefits at issue in this action; and

(f) That the Plaintiff, Bobby Mewbourn Jr., be granted such other, further different and more general relief to which he may be entitled in this action.[11]

---

[11] Declaratory Judgment Complaint filed in the Circuit Court of Shelby County, Alabama on July 24, 2002 as Civil Action No. CV-02-937 (attached to Notice of Removal (doc. no. 1) as Exhibit 1), at 9-10.

A similar declaratory judgment, where plaintiff sought an adjudication that his health insurer was not entitled to a portion of his tort recovery, was held by the *Arana* court to *not* be within the scope of § 502(a), because the suit "[did] not seek health care benefits under the [ERISA] plan." *Arana*, 302 F.3d at 470. The court further held that such a declaratory judgment action cannot be removed to federal court on the ground that it "seeks to enforce . . . rights under the terms of the plan" because, although a plaintiff's suit to have the terms of the plan declared illegal may be "akin" to a suit to enforce the terms of the plan itself, "the fact that a claim is akin to a cause of action authorized under § 502(a) is not enough to support a federal claim under ERISA." *Arana*, 302 F.3d at 471-72 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 712-717, 151 L. Ed. 2d 635 (2002) ("ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly") (emphasis in original)). The *Arana* court concluded that, since the declaratory judgment action in that case neither sought benefits under the plan, nor sought to enforce the terms of the plan, the action did not fall within the scope of § 502(a), and thus was not completely preempted by ERISA. *Arana*, 302 F.3d at 473. In the case at hand, plaintiff argues that his factually-similar declaratory judgment action should be afforded the same result.

However, plaintiff's argument overlooks a critical difference between the facts of *Arana* and those of the present action. *Arana* dealt with an *insured* employee benefits plan,[12] while the present action involves a *self-funded* employee benefits plan.[13] This distinction makes all the difference in the analysis of this court's jurisdiction, due to the operation of the so-called "savings" and "deemer"

---

[12] *Arana v. Ochsner Health Plan, Inc.*, 134 F. Supp. 2d 783, 784 (E.D. La. 2001).

[13] The Wal-Mart Plan's brief in opposition to remand, at 4.

-8-

clauses of ERISA. ERISA is a "comprehensive and reticulated statute," which casts a wide, but carefully demarcated, preemptive net. *See Great-West Life and Annuity Insurance Company v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 712, 151 L. Ed. 2d 635 (2002) (citations omitted). Except as provided in the savings clause, the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (preemption clause). The savings clause directs that, except as set forth in the deemer clause, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144 (b)(2)(A). The deemer clause, in turn, provides that

> [n]either an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B). The Supreme Court concisely summarized the operation of these provisions in *FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S. Ct. 403, 409, 112 L. Ed. 2d 356 (1990):

> The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The savings clause returns to the States the power to enforce those laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

In essence, the "deemer clause" serves to exempt *self-funded* plans under ERISA from state laws purporting to "regulate insurance," as that term is defined in the "savings clause" of ERISA.

*Holliday*, 498 U.S. at 409, 111 S. Ct. at 61. The Supreme Court in *Holliday* illustrated the operation of the "savings" and "deemer" clauses to state laws purporting to regulate self-funded employee benefit plans:

> State laws [not explicitly regulating insurance] directed toward the plans are preempted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" *but do not reach self-funded employee benefits plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.*

*Id.* (emphasis supplied). Thus, any state law purporting to regulate a self-funded ERISA plan must necessarily be preempted. *See United Food and Commercial Workers and Employers Ariz. Health and Welfare Trust v. Pacyga*, 801 F.2d 1157, 1159 (9th Cir. 1986) (holding that the savings clause is not applicable to a self-funded ERISA plan). *Cf. Blue Cross and Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1356 n.6 (11th Cir. 1998) (holding that Alabama Rule of Civil Procedure 17(a) was preempted by the ERISA savings clause because the rule was not specifically aimed at the insurance industry). Accordingly, because the Wal-Mart plan is self-funded, any Alabama law relating to subrogation under that plan is preempted under the deemer clause. This court thus has jurisdiction over this action, and the motion to remand is due to be denied.

### III. BLUE CROSS'S MOTION TO DISMISS

Co-defendant Blue Cross moves this court to dismiss it as a defendant on the grounds that "as of July, 2002, Blue Cross does not administer the reimbursement/subrogation provision of the Wal-Mart Associates' Health & Welfare Plan"[14] and, further, that "[a]t all times pertinent, Blue Cross had no control or discretion over the enforcement, construction, or implementation of any aspect of the reimbursement/subrogation provision of the Wal-Mart Associates' Health & Welfare

---

[14] Blue Cross's motion to dismiss ¶ 2.

Plan."[15]

The Federal Rules of Civil Procedure require that a complaint contain only a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)[16]). Consequently, a complaint should not be dismissed for failing to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102.[17] When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984);

---

[15] *Id.* ¶ 3

[16] Federal Rule of Civil Procedure 8(a)(2) provides: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997), stating:

> The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. . . .

*Id.* at 1368-69 (citation omitted); *see also Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

[17] *See also, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984) (holding that a complaint should be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations" of the plaintiff's complaint); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (quoting *Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988) ("[T]he 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'") (quoting *Conley*, 355 U.S. at 45-46, 78 S. Ct. at 102; *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

*see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). Even so,

> the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for
>
>> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13, at 8-118 (2d ed. 1984)).

Here, however, the court has more than pleadings for consideration. Plaintiff filed a brief, supplemented with evidentiary submissions, on October 16, 2002. Blue Cross had ample time to respond to these materials, but apparently elected not to do so. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and

all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986) (Richey, J.). This allows the court's inquiry to be fact specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact. *But see Denis v. Liberty Mutual Insurance Co.*, 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985) (same).

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, brief, and evidentiary submissions, this court is of the opinion that Blue Cross's "motion to dismiss" should be denied.

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 7th day of November, 2002.

_____
United States District Judge